Filed 1/27/14  In re Allison F. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ALLISON F., a Person Coming Under the Juvenile Court Law. | B249261 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PAULA F.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK93184) |

APPEAL from orders of the Superior Court of Los Angeles County, Terry T. Truong, Referee.  Affirmed.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Kim Nemoy, Principal Deputy County Counsel for Petitioner and Respondent.

Paula F. challenges jurisdictional and dispositional orders made by the juvenile court in this dependency proceeding in which her infant daughter, Allison F., was declared a dependent of the court. We find substantial evidence of risk to the child to support jurisdiction and no abuse of discretion in the disposition order.

## FACTUAL AND PROCEDURAL SUMMARY

Mother Paula F. has two children, Richard C. (born in December 2007) and his half-sister, Allison F., (born in January 2013). Mother was 14 years old when she became pregnant with Richard. In June 2012, the dependency court sustained a petition brought by the Department of Children and Family Services (department) finding Richard to be a dependent child because of a history of domestic violence between mother and the child's father, a six-year history of drug abuse by mother, and the father's history of substance abuse. Richard was removed from mother's care. Mother entered a six-month inpatient substance abuse program in May 2012, but did not comply with the program and did not complete it. She claimed to have visited Richard each Tuesday while at that program, but did not do so. She also did not successfully complete an outpatient program, and she failed to appear for seven out of twelve random drug tests from June to December 2012.

A children's social worker conducted an assessment and concluded that the risk of future maltreatment of Allison was high based on mother's history of drug use, the age of the child, and the case involving Richard. But since mother had been admitted to the Flossie Lewis residential program in January 7, 2013, shortly before Allison was born, the department recommended that Allison remain in mother's care contingent on mother remaining in her current residential treatment program. The department determined that court intervention was needed to ensure case plan compliance. Mother was uncertain which of two men had fathered Allison.

A petition was filed by the department under Welfare and Institutions Code section 300,[1] subdivision (b), alleging that Allison is a dependent child because mother's

---

[1] Statutory references are to the Welfare and Institutions Code.

unresolved history of drug use rendered her unable to supervise or protect the child, and because the half-sibling Richard was currently a dependent of the court due to mother's drug abuse. The juvenile court released Allison to mother's custody on the condition that mother remain in her program and test clean.

The jurisdiction/disposition report for the March 11, 2013 hearing summarized a new interview with mother in February 2013. She admitted the allegations were true because she was using marijuana and methamphetamines. Mother also admitted that she did not complete the residential substance abuse program she was in before giving birth to Allison, and that she refused an offer to sign a new three-month contract with that program. She had planned to participate in an outpatient program, but attended only once before Allison's birth. Mother stated that she was very happy in her present residential program, which was more professional and organized than the previous program. She said the last time she had used methamphetamines was in April 2012.

A counselor at mother's current residential program told the children's services worker that mother was attending and participating in twice daily group sessions on weekdays and weekly counseling session. Although mother initially had a difficult time adjusting to the schedule, she had improved significantly and was doing well. Mother was drug testing with negative results. Mother had been selected for random drug testing three times after the petition as to Allison was filed. She did not test twice, and tested negative once.

The department recommended that Allison be declared a dependent under section 300 subdivision (b) and ordered to reside at mother's home, on the condition that mother remain in her drug rehabilitation program and continue to test clean. Family maintenance services were recommended for mother and Allison. The department also recommended that mother be ordered to participate in a program of parent education, substance abuse, and individual counseling, and that she submit to random drug testing.

3

In February 2013, a counselor at mother's inpatient substance abuse program wrote a letter stating that mother was in the primary phase of treatment. She was participating in numerous weekly groups and classes, such as relapse prevention, feelings, boundaries, life skills, smoking cessation, 12 & 12 recovery, anger management, parenting, healing and trauma, big book study, addition education, morning meditation, art/music therapy, adult children of alcoholics and domestic violence. Mother was attending daily 12-step meetings and was scheduled to work toward maintaining a sponsor in the coming weeks. Mother met with the counselor weekly. She was showing dedication and willingness to reach long term sobriety for newborn Allison. The counselor wrote that mother showed tremendous progress in the preceding three weeks.

The jurisdiction/disposition hearing was held in March 2013. No testimony was taken. The court considered the detention report, the jurisdiction/disposition report, and the progress letter from mother's counselor. Counsel for mother requested dismissal of the petition, arguing that mother had remained sober since April 2012 with clean tests since then, had made progress in her program, and was in current compliance. Counsel for Allison asked the court to sustain the petition because of mother's admitted substance abuse issues and failure to complete her earlier program. The attorney argued that, while mother tested negative when she submitted to tests, she was a no-show for testing on November 2 and December 17, 2012 and on January 11 and 30, 2013. Counsel for minor submitted on the issue of Allison's placement in mother's care because mother was currently in a program. Counsel for the department joined in this argument.

The court found by a preponderance of the evidence that count (b)(1) of the petition was true as amended to delete the sentence that had stated mother had failed to regularly participate. As amended, the sustained count read: "The child, Allison [F.'s] mother, Paula [F.], has an unresolved history of illicit drug use, including use of methamphetamine and marijuana. On 4/16/12 the mother was under the influence of illicit drugs while the child's sibling, Richard [C.], was in the mother's care and supervision. The child's sibling is a dependent of the Juvenile Court due to the mother's

4

illicit drug use. The mother's unresolved history of illicit drug use places the child at risk of harm."

The court declared Allison a dependent within section 300, subdivision (b). She was ordered to remain placed with mother on condition that mother was in a drug program. The department was ordered to provide family maintenance services to mother, including a drug rehabilitation program with aftercare, random or on-demand weekly testing, and individual counseling, which could be a component of the drug program. Mother was warned that Allison could be immediately detained if mother left the drug program. The court admonished mother that a missed test was considered to be a dirty test. Mother filed a timely appeal from the jurisdiction order.

## DISCUSSION

### I

Mother argues the court erred in finding Allison came within dependency jurisdiction because there was no evidence of current or future risk of harm to her. Mother contends that while she was concerned about her ability to appropriately care for Richard, there was no evidence of actual physical harm or abuse as to him. She cites maternal grandmother's statement that she believed it likely mother had reported herself to the department in a desire to get help. Mother acknowledges her failure to make progress while receiving services in Richard's case, which was filed in April 2012, less than a year before the petition was filed as to Allison in January 2013. She was pregnant with Allison during most of that period. Mother explained that she was only 15 when she gave birth to Richard, had experienced family turmoil, had been kicked out of her mother's home when she was 13, had not completed high school and had several relationships with men at an early age.

Mother contends that she has demonstrated a new commitment to sobriety and dedication to Allison by entering a residential treatment program. She also argues that Allison is a healthy, drug-free baby and that there is no evidence that she has not been well cared for.

5

"At the jurisdictional hearing, the dependency court's finding that a child is a person described in section 300 must be supported by a preponderance of the evidence. [Citations.] We review the dependency court's jurisdictional findings for substantial evidence, and review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those findings. [Citation.] 'Section 300, subdivision (b) provides a basis for . . . jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's mental illness, developmental disability or substance abuse.' [Citation.]" (*In re John M.* (2013) 217 Cal.App.4th 410, 418.)

"A jurisdictional finding under section 300, subdivision (b) requires '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.] 'Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness.' [Citations.]" (*In re John M.*, *supra*, 217 Cal.App.4th at p. 418.)

Mother argues we may not presume a substantial risk of current or future harm sufficient to warrant jurisdiction under section 300, subdivision (b) based on evidence of her substance abuse problem alone. She cites *In re James R.* (2009) 176 Cal.App.4th 129 which held: "Although evidence of past conduct may be probative of current conditions, the court must determine 'whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.' (*In re Rocco M.* [1991] 1 Cal.App.4th [814,] 824; see *In re Janet T.* (2001) 93 Cal.App.4th 377, 388.) Evidence of past conduct, without more, is insufficient to support a jurisdictional finding under section 300. There must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]" (*Id.* at pp. 135–136.)

In addition, mother relies on *In re David M.* (2005) 134 Cal.App.4th 822, in which the appellate court reversed a jurisdictional finding because there was insufficient

6

"evidence of a specific, defined risk of harm to [the minors] resulting from mother's or father's mental illness. . . ." (*Id.* at p. 830.) In that case, the mother's mental and substance abuse problems and the father's mental problems were not tied to actual harm to the minors. (*Id.* at p. 829.) The parents were raising an older child in a clean, tidy home. The mother had tested negative 18 times and all missed tests were excused. The child welfare agency conducted no new investigation, relying instead on an investigation related to an older half-sibling more than three years earlier. (*Id.* at p. 830.)

But here, as the department argues, there was additional evidence to support jurisdiction. Less than a year before the petition was filed as to Allison, a petition was filed as to her older half-sibling Richard. That petition was sustained based on findings that he was at risk of harm because of substance abuse by both parents and a history of domestic violence. Mother did not comply with the reunification program ordered in Richard's case.

In *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*), a nine-month-old infant was referred to the department based on allegations that father used marijuana for a medical condition pursuant to a medical marijuana prescription, and that mother had an extensive and unresolved history of drug abuse, mental illness, and prior department involvement with other children. Mother was not a party to the appeal so the appellate court did not consider the facts relating to her. (*Id.* at p. 758.) The court ruled that "[t]he trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case." (*Id.* at p. 766.) It concluded that the case fell within the group of cases under section 300, subdivision (b) which involve "children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. . . .[Citations.]" (*Id.* at p. 767.) In such cases, "the finding of substance abuse is prima facie evidence of the inability of a parent . . . to provide regular care resulting in a substantial risk of harm." (*Ibid.*) Since the child in *Drake M.* was only 14 months old, the appellate court concluded that the department "needed only to produce sufficient evidence that father was a substance

abuser in order for dependency jurisdiction to be properly found." (*Ibid.*) It failed to do so. (*Ibid.*)

This case falls within the group of cases involving a risk of harm to a child of tender years posed by a parent's substance abuse. Allison is an infant. Mother, an admitted substance abuser, had an older child in dependency proceedings and had not complied with the program as to him. She was demonstrating much greater success in her new inpatient program, but had been in it only two months by the time of the jurisdictional hearing. She continued to miss drug tests during that period. Allison was doing well, but this was under closely supervised circumstances. On this record, we find substantial evidence to support the trial court's jurisdictional order.

## II

Mother also challenges the court's dispositional order, arguing that even if the evidence warranted sustaining the petition, the court could have ordered services under the informal supervision of the department under section 360, subdivision (b) without declaring the child a dependent of the court.[2] She suggests that in the event she failed to cooperate with informal services, the department could file a petition under section 332 and 360, subdivision (c)[3]. She acknowledges that the court does not have direct authority to oversee the services or the family under informal supervision by the department. (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1259.)

---

[2] Section 360, subdivision (b) provides: "If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."

[3] Section 360, subdivision (c) provides: "If the family subsequently is unable or unwilling to cooperate with the services being provided, the social worker may file a petition with the juvenile court pursuant to Section 332 alleging that a previous petition has been sustained and that disposition pursuant to subdivision (b) has been ineffective in ameliorating the situation requiring the child welfare services. Upon hearing the petition, the court shall order either that the petition shall be dismissed or that a new disposition hearing shall be held pursuant to subdivision (d)."

"'At the dispositional hearing, the [dependency] court must order child welfare services for the minor and the minor's parents to facilitate reunification of the family. [Citations.]  The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion.  [Citations.]  We cannot reverse the court's determination in this regard absent a clear abuse of discretion.  [Citation.]  [¶] The reunification plan "'must be appropriate for each family and be based on the unique facts relating to that family.'"  [Citation.]' [Citations.]" (*Drake M.*, *supra*, 211 Cal.App.4th at p. 770.)

Mother argues that there is no evidence that even the apparently "benign" maintenance services ordered here were necessary to protect Allison.  We disagree.  As discussed, mother admitted a seven-year substance abuse history and had failed to successfully complete treatment as ordered in the dependency case involving Richard. She had a difficult beginning in the new residential program in which she was residing with Allison.  But with close supervision and intensive services, she and Allison were doing well.  On this record, we find no abuse of the court's discretion in declaring the child a dependent of the court and ordering services pursuant to this finding.

## DISPOSITION

The court's jurisdiction and disposition orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    EPSTEIN, P. J.

We concur:



WILLHITE, J.                          MANELLA, J.


9